

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MEM
F. # 2019R00156

*610 Federal Plaza*
*Central Islip, New York 11722*

October 27, 2023

By ECF

The Honorable Joan M. Azrack
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. Patrick O'Brien
                Criminal Docket No. 19-098 (JMA)

Dear Judge Azrack:

      The government submits this letter in advance of the defendant Patrick O'Brien's sentencing, which is scheduled for October 8, 2023. For the reasons set forth below, the government requests that the Court impose a sentence of 71 months' imprisonment.

I.      Facts and Procedural History

      A.    The Defendant's Cocaine and Cocaine Base Trafficking on Long Island

      In 2019, the Department of Homeland Security and the Suffolk County Police Department became aware that the defendant was distributing large quantities of cocaine and cocaine base from his residence. On February 26, 2019, a court authorized search warrant was executed at the defendant's residence located in Mastic, New York. Law enforcement recovered, among other items, the following:

1. Approximately 950 grams of cocaine found inside a "trap" in the basement of the defendant's residence (pictured below);
2. Approximately 70 grams of cocaine base and at least one individually packaged glassine bag of cocaine, found in a dresser drawer inside the defendant's bedroom (pictured below);
3. One 20-gauge shotgun (the "Shotgun") found under the defendant's mattress (pictured below);
4. One Electric stun gun found in a nightstand in the defendant's bedroom (pictured below);
5. One box of 20-Gauge shotgun ammunition, glassine bags and a white powdery substance believed to be cocaine residue, found inside the defendant's bedroom; and

6. A total of $8,000 recovered from: (1) on top of the same dresser where the defendant stored the above referenced 70 grams of cocaine base along with a white powdery substance that appeared to be cocaine residue; and (2) inside an adult male size sweatshirt, also in the defendant's bedroom (pictured below).

**The Shotgun Found Under Defendant's Bedroom Mattress:**



**Approximately 70 grams of Cocaine Base found in Defendant's Bedroom Dresser Drawer:**



**United States Currency and White Powdery Substance on Top of Dresser Recovered in Defendant's Bedroom:**



**Glassine Bags, 20-Gauge Shot Ammunition and a White Powdery Substance Belived to be Cocaine:**



3

**United States Currency Found in an Adult Sized Male Sweatshirt:**



**Approximately 950 Gram of Cocaine Hidden in a "Trap" Located in the Basement of Defendant's Residence:**



After law enforcement entered the defendant's home, he was advised of his Miranda rights, agreed to waive them, and agreed to be interviewed. The defendant stated the following:

- "I have been dealing [cocaine base] and [powder cocaine] for only six months."
- "I get my product for about $40.00 a gram and sell it for $100.00 a gram."
- "Inside my bedroom in my dresser top drawer I had [powder] cocaine and [cocaine base]."
- "Under my mattress is a 20 gauge . . . shotgun."
- "In my basement . . . I had approximately a half kilo in a closet area of . . . cocaine. . .."
- "About 2 weeks ago I bought that cocaine whish was about one full kilo for $39,000."

On February 26, 2019, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with violations of Title 21, United States Code, Sections 846 and 841(b)(1)(A)(iii) and 841(b)(1)(B)(ii)(II) ("Count 1") and Title 18, United States Code, Section 924(c) ("Count 2"), respectively. On February 24, 2022, the defendant pleaded guilty to Count 1 before United States Magistrate Judge Anne Y. Shields. ECF 68. Notably, during his allocution[1] the defendant stated:

> "Between January 2012 and June 2018, in Suffolk County,
> I conspired with others to distribute more than 280 grams
> of cocaine base and 500 grams of cocaine."

Id. at Pg. 18.

II.   Guidelines Calculation

   A. Probation's Calculation

On November 30, 2022, the United States Probation Department (the "Probation Department" or "Probation") issued the PSR in this case. The government agrees with the Guidelines Range determined by Probation, which is 108 to 135 months' imprisonment, based upon an adjusted offense level of 31 and a criminal history category I. PSR ¶¶ 21, 28 and 57. The government agrees with Probation's calculation, which, notably includes a two-point enhancement for possession of a firearm[2] while distributing drugs (the "Gun Enhancement"). PSR ¶ 12.

---

[1] The defendant's plea allocution is attached as Exhibit A and incorporated by reference.

[2] The defendant's opposition to the Gun Enhancement is discussed below. Def. Mem. 7.

5

### B. Request for Modified Guidelines Calculation

Although Probation accurately calculated the defendant Guidelines, namely, Probation applied an enhanced penalty for cocaine base, the government is requesting to use a modified Guidelines range. Current DOJ policy requires the Office to treat cocaine base the same as powder cocaine, rather than with the harsher penalties suggested by the Guidelines and the cocaine base statute. Probation determined that the defendant was responsible for a total distribution of 2.8 kilograms of combined cocaine and cocaine base. Treating this as a 1:1 ratio of cocaine base to cocaine, results in a base offense level of 26. U.S.S.G. §2D1(c)(7). The defendant is subject to a two-point enhancement for the firearm recovered in his bedroom. U.S.S.G. §2D1.1(b)(1). Finally, the defendant should receive a three-point reduction for acceptance of responsibility and his timely plea. U.S.S.G. §3E1.1(a)-(b). All parties agree the defendant is a criminal history category I. This results in an adjust offense level of 25 and an advisory Guidelines range of 57-71 months incarceration.

### C. Request to Accept Defendant's February 24, 2022 Plea Allocution to Possession and Distribution of 500 Grams or More of Cocaine

Based on the current DOJ policy described above, the government has consulted with Steven A. Metcalf II, Esq., counsel for the defendant. The government and the defendant jointly request that the Court accept the defendant's allocution on February 24, 2022 to the possession and distribution of more than 500 grams of cocaine, in violation of Title 21, U.S.C., Section 841(b)(1)(B)(ii)(II). If the Court accepts this joint recommendation, on the date of sentence the government will move to dismiss the defendant's current plea to possession and distribution of more than 280 grams of cocaine base, in violation of Title 21, U.S.C., Section 841(b)(1)(A)(iii). If the Court accepts the joint recommendation, the defendant will now face a mandatory minimum sentence of five years incarceration and a maximum sentence of 40 years' incarceration. Id.[3]

### D. The Because the Gun Enhancement is Applicable the Defendant Does Not Qualify for Safety Valve Treatment

Under U.S.S.G. § 5C1.2(a), a court may impose a sentence "in accordance with the applicable guidelines without regard to any statutory minimum sentence" if the court finds that the defendant meets five identified criteria. In addition to removing the statutory mandatory minimum applicable to the offense of conviction, the safety-valve provision allows for a two-level decrease in the defendant's Guidelines range. See U.S.S.G. § 2D1.1(b)(18).

"Generally, under the Sentencing Guidelines, a defendant who seeks to take advantage of a sentencing adjustment carries the burden of proof." United States v. Smith, 174 F.3d 52, 55 (2d Cir. 1999) (internal quotation marks omitted). This is true for application of the safety-valve adjustment under U.S.S.G. §§ 5C1.2 and 2D1.1(b)(18). See id. at 56. Thus, the defendant generally bears the burden of establishing by a preponderance of the evidence that he has satisfied the five criteria set forth under § 5C1.2. See e.g., United States v. Jimenez, 451

---

[3] For purposes of this sentencing memorandum the government assumes that the Court will have no objection to joint recommendation described above.

F.3d 97, 102 (2d Cir. 2006); United States v. Reynoso, 239 F.3d 143, 146 (2d Cir. 2000); United States v. DeJesus, 219 F.3d 117, 122 (2d Cir. 2000) (per curiam); but see United States v. Holquin, 436 F.3d 111, 119 (2d Cir. 2006) (leaving open whether defendant or government bears burden of establishing the defendant's eligibility for the safety-valve criterion addressed to the defendant's role in the offense).

The second condition set forth in §5C1.2(a) – which is the condition at issue here – requires, in relevant part that, "the defendant did not . . . possess a firearm or other dangerous weapon . . . in connection with the offense." Here, the defendant conceded on the day of his arrest and in his current motion that he possessed the Shotgun, however, he contends that the possession of the Shotgun was not in connection with the narcotics offense. Def. Mot. 7. Rather, the defendant claims the Shotgun was for "his own protection." Id. The defendant further claims that Probation agreed that the Shotgun was for "protection" rather than related to the drug offense Id. However, the defendant fails to address the fact that Probation added the Gun Enhancement.[4] PSR ¶12.

Here, the defendant's claims that the Shotgun was not part-and-parcel to the drug offense are against the weight of the evidence. Notably, the defendant admittedly had recently purchased a significant and valuable amount of cocaine. Specifically a kilogram of cocaine worth almost $40,000. Additionally, the Shotgun was recovered in the same room where ammunition for the shotgun was found next to glassine bags used to package narcotics, large quantities of money and what appeared to be cocaine residue.[5] Not surprisingly, it is well-settled that firearms are tools of the trade for drug dealers. United States v. Santos, 541 F.3d 63, 72-73 (2d Cir. 2008) (holding that drug dealers often keep firearms on their premises as tools of the narcotics trade). This is because, as the defendant clearly knows, drug dealers who use their residence as a place to sell drugs are prime targets for robberies. At these locations there is likely to be substantial amounts of cash and drugs (as is the case here), and drug dealers are not likely to alert law enforcement officials when their illegal narcotics and cash are stolen. Additionally, drug dealers use firearms "[b]ecause narcotics conspiracies are illicit ventures [and] disputes are frequently settled by force or the threat of force." Santos, 541 F.3d at 72. Accordingly, because the defendant possessed the Shotgun in the same room as shotgun ammunition, cocaine base, large amounts of currency and narcotics packaging materials, there was a much greater likelihood that the Shotgun would be used if needed. Based on all of the evidence, the defendant's possession of the Shotgun was in furtherance of his narcotics related activity, and, as such, he has not met his burden of proof and is not safety valve eligible.

III. Sentencing Analysis

The government submits that a sentence of 71 months' imprisonment is sufficient, but not greater than necessary, to achieve the goals of sentencing. See 18 U.S.C. § 3553(a).

---

[4] Probation further concluded the defendant was not safety valve eligible based on the Gun Enhancement. PSR ¶13.

[5] The defendant's contention that the Shotgun "ammunition was found elsewhere in the home" is incorrect. As depicted in the pictures above, the Shotgun was found in the same room as the Shotgun ammunition.

7

Such a sentence reflects the seriousness of this offense, including the fact that the narcotics conspiracy continued for more than seven years, promotes respect for the law, and protects the public.

The government submits that a sentence of 71 months, which is below the initial statutory mandatory minimum contemplated by the parties, is an appropriate sentence. Ultimately, each sentence must be imposed according to the law and the individual conscience of the judge. However, these factors also suggest that the Court should consider the sentences that other judges would impose under similar facts. Since every sentence must begin with the Guidelines, it is safe to assume that the sentences in other Courts would often adhere to the advisory Guidelines. After all, those Guidelines are designed for the typical, or "heartland," case in mind. Here, not only do the Guidelines suggest that a 71 month sentence is appropriate, but all the Section 3553(a) factors call for such a sentence as well.

The defendant has spent seven years selling dangerous drugs on Long Island. The defendant attempts to paint himself as a family man and small time drug dealer, but ignores the fact that when he was arrested, law enforcement recovered almost a kilogram of cocaine, a shotgun, $8,000 and packaging materials. These amounts contravene any claim that he is a small-scale dealer.

The Court must also consider the "need for the sentence imposed to promote respect for the law, and to provide for just punishment for the offense." 18 U.S.C. § 3553 (a)(2)(A). A sentence of 71 months will accomplish this while promoting respect for the law and providing just punishment. As set forth above, this is a serious case where the defendant sold poisonous drugs on the streets of Long Island. Cases of this nature requires substantial custodial sentences. These sentences are among the best ways in which to communicate to the public that they will be protected and that the guilty will be punished. Were the defendant to walk away with a significantly reduced sentence, an unfortunate message would be sent to our community that these crimes are unworthy of significant punishment.

IV. <u>Conclusion</u>

For the reasons set forth above, the government respectfully submits that a sentence of 71 months, to be followed by a substantial period of supervised release, is warranted in this case.

Respectfully submitted,

BREON PEACE
United States Attorney

By:       /s/
      Mark E. Misorek
      Assistant U.S. Attorney
      (631) 715-7874

cc: Clerk of the Court (JMA) (via Email and ECF)
    Steven A. Metcalf, II, Esq. (via Email and ECF)